**IN THE UNITED STATES BANKRUPTCY COURT**
**Northern District of Illinois, Eastern Division**

| | | |
|---|---|---|
| In the Matter of: | } | |
| | } | Case No.  17-13886 |
| Central Grocers, Inc., et. al. | } | |
| | } | Chapter 7 |
| | } | Hon.  Pamela S. Hollis |
| Debtor(s) | } | |
| _____ | } | |
| | } | |
| Howard B. Samuels, solely as chapter 7 | } | |
| Trustee of the estates of Central Grocers, | } | |
| Inc., et.al. | } | |
| | } | |
| Plaintiff, | } | |
| | } | Adversary No. 18-00735 |
| v. | } | |
| | } | |
| Benicio & Company, Inc.; Esequiel | } | |
| Linares, Inc., R&E's Fresh Market, Inc,; | } | |
| Sammy & Company Corp. and | } | |
| Supermercado La Villita, Inc., | } | |
| | } | |
| Defendants. | } | |

**NOTICE OF FILING**

Please take notice that on March 21, 2019, Defendant through its Glenn Betancourt filed with the Clerk of the U.S. Bankruptcy Court for the Northern District of Illinois, their Answer to Trustee's Adversary Complaint and Affirmative Defenses to Trustee's Adversary  Complaint a true and accurate copy of which is attached hereto and hereby served upon you.

Dated:                                            Respectfully Submitted,

                                                          /s/ Glenn Betancourt
                                         By: _____
                                                Glenn Betancourt

Glenn Betancourt
Attorney No, 6220742
2720 South River Road
Suite 23
Des Plaines, IL.  60018
Tel 847-768-5805
Courtburg1@outlook.com

CERTIFICATE OF SERVICE

I Glenn Betancourt, being first duly sworn on oath depose and state that I served a copy of the foregoing Notice and Answer to Trustee's Adversary Complaint and Affirmative Defenses to Trustee's Adversary Complaint via electronic transmission through the Court's ECF filing system or by First Class Mail properly addressed and postage prepaid to all parties on the attached service list, on March 21, 2019, before 5:00 p.m.

/s/ Glenn Betancourt

_____

Glenn Betancourt

Service List

1.  Leo B. Oppenheimer REID COLUNS & TSAI LLP 160 I Elm Street, 42nd Floor Dallas, TX 7520 I VIA ecf loppenheimer@rctlegal.com Special Litigation Counsel to Howard B. Samuels. Chapter 7 Trustee for the estates of Central Grocers, Inc., Strack and Van Ti/ Super Market, Inc. and SVT. LLC

2.      Mr. Patrick Layng - US Trustee, 219 South Dearborn, Room 873, Chicago, IL 60604 via ECF

Glenn Betancourt
Attorney No, 6220742
2720 South River Road
Suite 23
Des Plaines, IL.  60018
Tel 847-768-5805
Courtburg1@outlook.com

## IN THE UNITED STATES BANKRUPTCY COURT
### Northern District of Illinois, Eastern Division

| | | |
|---|---|---|
| In the Matter of: | } | Case No.  17-13886 |
| | } | |
| Central Grocers, Inc., et. al. | } | |
| | } | Chapter 7 |
| | } | Hon.  Pamela S. Hollis |
| Debtor(s) | } | |
| _____ | } | |
| | } | |
| Howard B. Samuels, solely as chapter 7 | } | |
| Trustee of the estates of Central Grocers, | } | |
| Inc., et.al. | } | |
| | } | |
| Plaintiff, | } | |
| | } | Adversary No. 18-00735 |
| v. | } | |
| | } | |
| Benicio & Company, Inc.; Esequiel | } | |
| Linares, Inc., R&E's Fresh Market, Inc,; | } | |
| Sammy & Company Corp. and | } | |
| Supermercado La Villita, Inc., | } | |
| | } | |
| Defendants. | } | |

### ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT  BENICIO & COMPANY, INC. TO TRUSTEE'S ADVERSARY COMPLAINT

### JURISDICTION AND VENUE

1.   This adversary proceeding relates to the above-captioned bankruptcy case (the "Bankruptcy Case"), which was commenced on May 2, 20 I 7 (the "Petition Date") under title 11 of the United States Code (the "Bankruptcy Code").

**ANSWER:** Defendants admit the assertions of paragraph 1.

2.   This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ I 57(a) and 1334(6), as well as Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding as defined by 28 U.S.C. § I 57(b)(2)(A), (B), (E), (F), (H), and (0).

**ANSWER:** Defendants admit the assertions of paragraph 2.

3.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

**ANSWER:** Defendants admits the assertions of paragraph 3.

4.  Pursuant to Rule 9015-1 of the Local Rules of Bankruptcy Practice and Procedure for this Court, the Trustee states that he consents to the entry of a final order or judgment by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution with respect to any of the requests for relief set forth in this Complaint.

**ANSWER:**  Paragraph 4 consists of assertions which are conclusions of law and as such do not require an Answer.  To the extent that other statements contained in Paragraph 4 require an answer, those are denied.

## PARTIES

5.  Plaintiff  HOWARD B. SAMUELS is the Chapter 7 trustee (the "Trustee") for the bankruptcy estates of Central Grocers, Inc. ("CGI"), Strack and Van Til Super Market, Inc. ("Strack"), and SVT, LLC (together with Strack, "SVT").

**ANSWER:** Defendant admits the assertions of paragraph 5.

6.  Defendant BENICIO & COMPANY, INC. D/B/A SUPER ESPIGA ("Benicio") is an Illinois Corporation with its principal place of business at 4920 W. 14th Street, Cicero, IL 60804. Benicio may be served with process through its registered agent, Maria Elena Linares, at 195 Northwood Rd., Riverside, IL 60546.

**ANSWER:** Defendant admits the assertions of paragraph 6.

7.  Defendant ESEQUIEL LINARES, INC. D/B/A SUPERMERCADO TORRES #3 ("Esequiel") is an Illinois Corporation with its principal place of business at I 642 S. Cicero, Cicero, IL 60650. Esequiel may be served with process through its registered agent, Esequiel Linares, at 1642 S. Cicero, Cicero, IL 60650.

**ANSWER:**  Defendant does not possess sufficient knowledge to admit or deny these assertions. To the extent an answer is required, the assertions of Paragraph 7 are Denied.

8.  Defendant R&E'S FRESH MARKET, INC. D/B/A LA VILLITA FRUIT & MARKET ("R&E") is an Illinois Corporation with its principal place of business at 245 N. Schmidt Rd., Bolingbrook, IL 60440. R&E may be served with process through its registered agent, Ruben Linares, at 7540 W. 63rd St., Summit, IL 60501.

**ANSWER:**  Defendant does not possess sufficient knowledge to admit or deny these assertions. To the extent an answer is required, the assertions of Paragraph 8 are Denied.

9.  Defendant SAMMY & COMPANY CORP. D/B/A SUPERMERCADO LA VICTORIA, INC. ("Victoria") is an Illinois Corporation with its principal place of business at 3927 W. 63rd Street, Chicago, IL 60629. Victoria may be served with process through its registered agent, Daniel H. Brown, at 53 W. Jackson# 703, Chicago, IL 60604.

**ANSWER:** Defendant does not possess sufficient knowledge to admit or deny these assertions. To the extent an answer is required, the assertions of Paragraph 9 are Denied.

10. Defendant SUPERMERCADO LA VILLITA, INC. ("Villita") is an Illinois Corporation with its principal place of business at 7540 W. 63rd St., Summit, IL 60501. Villita may be served with process through its registered agent, Ruben Linares, at 7540 W. 63rd St., Summit, IL 60501.

**ANSWER:** Defendant does not possess sufficient knowledge to admit or deny these assertions. To the extent an answer is required, the assertions of Paragraph 10 are Denied.

## BACKGROUND

11. CGI was a Chicago-based grocery cooperative with hundreds of members who operated grocery stores located in Illinois, Indiana, Iowa, Michigan, and Wisconsin. Members joined CGI to participate in its purchasing, dividend, equity, and lending programs.

**ANSWER**: Defendant does not possess sufficient knowledge to admit or deny the location of CGI's base or where it operated stores or why other Members joined CGI, accordingly it denies that assertion.  Defendant admits it joined CGI to participate in its purchasing, dividend, equity and lending programs.

12. Members were required to maintain "good standing" status to participate in CGI's programs. The requirements for good standing, along with the other rights and duties of membership, were set out in CGI's membership agreement (the "Membership Agreement"), its Amended and Restated By-Laws (effective November 2012) (the "By-Laws"), the Rules and Regulations (effective March 2013) (the "Rules & Regulations"), its Amended and Restated Articles of Incorporation (as amended 2015) (the "Articles"), and its Member Loan Policy and Procedure (effective January 2010) (the "Loan Policy"). Each member signed the Membership Agreement, thereby agreeing to comply with the By-Laws, the Rules & Regulations, the Articles, and the Loan Policy.

**ANSWER:** Defendant admits the assertions of Paragraph 12 to the extent they are made individually against Defendant as a CGI member. To the extent the assertions are made in the plural form to include other members, Defendant does not possess sufficient knowledge to admit or deny the assertion as it applies to other Member or Defendants, and to that extent it Denies the assertions of Paragraph 12.

1. The Purchasing Program

13. Members in good standing were eligible to participate in CGI's purchasing program. Members received goods from CGI on account, and CGI received payment through automated clearing house ("ACH") transactions drawn from the member's bank account (the "Purchasing Arrangement"). Members were required to maintain deposit accounts ("Purchase Deposits") with CGI at amounts tied to their weekly buying volume. See Ex. A at 4; Ex. Bat 27- 28; Ex. C § 5. If a member failed to maintain an ACH account or failed to maintain appropriate Purchase Deposits, that member was deemed to be in violation of By-Laws and was no longer in good standing. See Ex. B at 28-29; Ex. C § 3. A member also lost its good standing status if payment to CGI was not made within the 12-day payment term. See Ex. B at 28-29; Ex. C §§ 3(d), 6.

**ANSWER:** The assertions of Paragraph 13 consists of conclusions of law to which no answer is required. To the extent an answer is required Defendant denies the allegations of Paragraph 13.

14. To terminate purchasing from CGI, members were required to adhere to the procedure outlined in the By-Laws: a member either had to sell or close all its retail locations concurrently with termination or terminate at fiscal year-end and provide 60 days' written notice to CGI (the "Termination Procedure"). See Ex. B at 28. If a member failed to comply with the Termination Procedure or violated any other provision of the By-Laws, that member was no longer in good standing, and that member forfeited any amount otherwise owed by CGI to such member. See id. at 25, 28, 29.

**ANSWER:** The assertions of Paragraph 14 consists of conclusions of law to which no answer is required. To the extent an answer is required Defendant denies the allegations of Paragraph 14.

## 2. The Patronage Dividend Program

15. Members in good standing were also eligible to participate in CGI's patronage dividend program, which was governed by the By-Laws and the Rules & Regulations. At the close of each fiscal year, CGI's board of directors (the "Board") determined how much of CGI's profit to retain for costs, debt service, and any other reason deemed to be in the best interests of CGI. See Ex. Bat 25, 27. The remaining profit, if any, was then distributed to members as a patronage dividend. If a member failed to maintain good standing or adhere to any provision of the By-Laws, including the Termination Procedure, it forfeited all rights to patronage dividends. See Ex. B at 25, 29.

**ANSWER:** The assertions of Paragraph 15 consists of conclusions of law to which no answer is required. To the extent an answer is required Defendant denies the allegations of Paragraph 15.

16. Members received their share of a patronage dividend either as a distribution of cash, stock, and credit at the end of the fiscal year, or as quarterly cash payments made in advance of the anticipated year-end dividend, with a final distribution of the balance as cash, stock, and credit at the end of the fiscal year.

**ANSWER:** The assertions of Paragraph 16 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 16.

17. On or about September 15, 2016, the Board authorized a $44.5 million patronage dividend, subject to final adjustments, for the fiscal year ending July 30, 2016 (the 2016 Patronage Dividend"). None of CGI's governing documents, nor any other agreement, required CGI to pay the 2016 Patronage Dividend or any portion thereof. As noted above, the Board had broad discretion under the By-Laws to retain some or all of CG f's profits for costs, debt service, and any other reason deemed to be in CG I's best interests. In fact, when the Board authorized the 2016 Patronage Dividend, CGI was insolvent and had been since at least January 2016.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the actions taken by The Board on or about September 15, 2016 and therefore denies those allegations of Paragraph 17. The rest of the allegations are conclusions of law that do not require an Answer and to the extent an answer is required the rest of the allegations are denied.

18. Shortly after authorizing the 2016 Patronage Dividend, the Board learned that CGI had violated the liquidity covenants in its $150 million credit facility. In turn, CGI's lenders demanded-as a condition for not declaring a default on the credit facility-that CGI defer paying 30% of the 2016 Patronage Dividend until CGI achieved compliance with such liquidity covenants (the "Deferred Dividend").

**ANSWER**:  Defendant does not possess sufficient knowledge to admit or deny these assertions. To the extent an answer is required, the assertions of Paragraph 18 are Denied.

19.  On or about October 13, 2016, the Board authorized the Deferred Dividend, thereby amending the 2016 Patronage Dividend so that CGI had no obligation to pay the Deferred Dividend until the company was able to make such payment without violating its liquidity covenants. CGI subsequently sent letters to its members, explaining that the Deferred Dividend had been approved and that 30% of each member's 2016 Patronage Dividend would be recorded solely for bookkeeping purposes in the member's deposit account. CGI's financial condition never recovered such that it could pay the Deferred Dividend and comply with the liquidity covenants.

**ANSWER:**  Defendant does not possess sufficient knowledge to admit these allegations.  To the extent an answer is required, the assertions of Paragraph 19 are Denied.

### 3. The Allowance Dividend Program

20. Members also profited from CGI's participation in allowance programs with its vendors. CGI entered into contracts with its vendors whereby it would commit to purchase a certain amount of product and in return the vendor would provide CGI a rebate-called an allowance-on its purchases.

**ANSWER:**  Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 20 and for that reason those allegations are Denied.

21. On October 27, 2016, while insolvent, CGI paid its members over $2,500,000 in dividends from profit it earned on vendor allowance programs (the "2016 Allowance Dividend"). None of CGI's governing documents, nor any other agreement, required CGI to pay the 2016 Allowance Dividend.

**ANSWER:**  Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 21 and for that reason denies those allegations.

4. The Lending Program

22. Finally, members in good standing were eligible to participate in CGI's member loan program. On or about May 17, 2012, CGI loaned $ 100,000.00 to Esequiel and in return Esequiel executed a promissory note for $100,000.00 in favor of CGI (the "Note"). In connection with the Note, CGI also received a board resolution from Esequiel authorizing the loan and a security agreement (together with the Note, the "Loan Documents").

**ANSWER**:  Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 22 and for that reason denies those allegations.

23. Under the Note, Esequiel was required to make installment payments of principal and interest to CGI until the principal amount was paid in full. A missed payment resulted in default. See Ex. F-1 at 3; Ex. E § III(5).

**ANSWER:**  Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 23 and for that reason denies those allegations.

24.  In the event of default, the Loan Documents provided CGI recourse. For example, CGI had the right to charge late fees and default interest. See Ex. F-1 at 3; Ex. E § III(S). CGI was also entitled to accelerate the Note and declare all outstanding interest, penalties, and principal immediately due. The Note provided for the following procedure related to acceleration (the "Acceleration Procedure"):

> Notice of Default. If Borrower is in default, Lender may send Borrower a written notice telling Borrower that if Borrower does not pay the overdue amount by a certain date, Lender may accelerate this Note and require Borrower to pay immediately the full amount of principal which has not been paid and all the interest that Borrower owes on that amount. Such date must be five (5) days after the date on which the notice is delivered or mailed to Borrower.

Ex. F-1 at 3.

In addition to default for missed payments, if Esequiel failed to maintain good standing, CGI was entitled to, among other things, charge default interest and late fees, sue on the Note and the guaranties, and foreclose on any collateral. See Ex. E § III(5), ( 10).

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 24 and for that reason denies those allegations.

## B. DEFENDANTS' PARTICIPATION IN CGI'S COOPERATIVE PROGRAM

25.  Defendants executed the Membership Agreements, thereby becoming bound by those agreements, the By-Laws, the Rules & Regulations, the Articles, and the Loan Policy. Defendants never resigned their CGI membership prior to the Petition Date.

**ANSWER**:  Defendant denies the allegations for Paragraph 25.

26.  As of the Petition Date, Defendants had received, but had not paid for, goods on account from CGI in the amount of $82,548.49 (the "Unpaid Receivable") and had $40,500.00 in their Purchase Deposit accounts. Defendants received and accepted the goods but cancelled their ACH accounts before CGI could draw payment. Defendants then terminated purchasing from CGI by April 28, 2017, without adhering to the Termination Procedure.

**ANSWER:**  Defendant denies the allegations for Paragraph 26.

27. Defendants' failure to remit payment for the Unpaid Receivable, failure to maintain an ACH account, and failure to terminate purchasing in accordance with the Termination Procedure constitute material breaches of the Purchasing Arrangement, the Membership Agreement, the By-Laws, and the Rules & Regulations.

**ANSWER:** Paragraph 27 contains conclusions of law to which no answer is required.  To the extent that an answer may be required, the remaining allegations in Paragraph 27 are denied.

28. Accordingly, Defendants (a) owe the Unpaid Receivable to CGI, (b) are no longer in good standing with CGI, (c) lost all rights to Patronage Dividends, and (d) forfeited any other amount owed to them by CGI.

**ANSWER:** Paragraph 28 contains conclusions of law to which no answer is required.  To the extent that an answer may be required, the remaining allegations in Paragraph 28 are denied.

## 2. Receipt of Avoidable Transfers

29. CGI transferred $28,167.28 of the 2016 Patronage Dividend to Defendants (the "Patronage Dividend Transfers") as indicated on the Patronage Dividend Transfer schedule attached as Exhibit G-1.

**ANSWER:** Defendant denies the allegations of Paragraph 29 of the Adversary Complaint.

30.  CGI transferred $5,087.72 of the 2016 Allowance Dividend to Defendants (the Allowance Dividend Transfer") as indicated on the Allowance Dividend Transfer Schedule attached as Exhibit G-2.

**ANSWER:** Defendant admits the allegations of Paragraph 30 of the Adversary Complaint.

31.  CGI transferred $743,778.28 to Defendants to reduce their Purchase Deposit accounts (the ··Purchase Deposit Transfers") as indicated on the Purchase Deposit Transfer Schedule attached as Exhibit G-3. The Purchase Deposit Transfers represented a return of cash or other consideration Defendants had contributed toward their Purchase Deposits.

**ANSWER**: Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 31 and for that reason denies those allegations.

32.  Each Defendant is owned and operated by a brother and/or sister of CGI director Alfredo Linares. For that reason, each Defendant is an insider of CGI and SYT.

**ANSWER**: Defendant admits that Alfredo Linares is the brother of an owner and operator of Defendant.  The rest of the allegations of Paragraph 32 contain conclusions of law to which no answer is required.  To the extent that an answer may be required, the remaining allegations in Paragraph 32 are denied.

### 3. Breach of Promissory Note

33.  Esequiel ceased making any payments on the Note as of May 4, 20 I 7, and therefore is in default under the Note.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 33 and for that reason denies those allegations.

34.  On May 31, 2018, in accordance with the Acceleration Procedure, the Trustee sent demand letters to Defendants (the "Demand Letter"), notifying Defendants of the default and demanding payment of the overdue amount on the Note.  The Trustee also demanded payment for the Unpaid Receivable, the Patronage Dividend Transfers, and the Purchase Deposit Transfers. Defendants did not respond to the Demand Letter and did not remit payment to the Trustee.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 34 as it refers to other Co-Defendants or a demand for payment under a note.  Defendant admits receiving a letter demanding payment for Unpaid Receivables, the Patronage Dividend Transfers and the Purchase Deposit Transfers.  Defendant admits Defendant did not respond to the letter.

35. On or about June 5, 2018, the Trustee accelerated the Note. Accordingly, all outstanding principal ($92,400.00), interest ($6,426.49), and penalties ($10,055.56) under the Note are

immediately due and payable by the Note Defendants in the aggregate amount of $108,882.05 (the "Note Obligation").

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 35 and for that reason denies those allegations.

## C. CGI'S INSOLVENCY

36. CGI was insolvent at the time of the 2016 Patronage Dividend, and at the time of each of the Patronage Dividend Transfers, Allowance Dividend Transfers, and Purchase Deposit Transfers described above.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 36 and for that reason denies those allegations.

37.  CGI suffered declining financial performance throughout 2015, 2016, and 2017.  Although it did not file for bankruptcy until May 2017, CGI was doomed to fail long before then. A primary driver behind CGI's collapse was the declining condition of SVT-CGI's retail grocery subsidiary and largest customer. A decline in SVT's performance affected CGI in several important ways. It reduced the cash flow from SVT, reducing CGI's ability to pay its debts as they came due. It reduced the value of CGI's Class B stock, thereby reducing the incentive for grocery retailers to become or remain Members. And it reduced the amount of product that SVT purchased from CGI, thereby reducing the amount of product that CGI purchased from its vendors, which diminished CGI's buying power and made CGI less attractive to grocery retailers.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 37 and for that reason denies those allegations.

38. CGI's declining performance quickly became evident in its reported financial numbers. As to its income statement, CGI suffered a net loss of over $49 million for the fiscal year ending July 30, 2016. As to its balance sheet, CGI recognized a $28 million impairment charge against goodwill and a $39 million impairment charge against fixed assets for fiscal year 2016. The causes of the deterioration in CGI's financial condition that led to these year-end impairment charges were also present in early 2016.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 38 and for that reason denies those allegations.

39.  Even with these impairments to its assets, CGI's balance sheet still overstated the Company's financial condition from a fair market perspective. Given the likelihood that CGI would soon fail, certain contingent liabilities should have been recognized on the company's consolidated balance sheet in 2016, including a significant portion of the following liabilities: (a) approximately $95 million in unfunded pension withdrawal liability; and (b) approximately $120 million in lease liabilities. In addition to its liabilities being understated, certain of CGI's assets were overstated on its balance sheet. CGI's distribution center, for instance, was carried on its balance sheet at $89 million throughout 2016 but sold for only $61 million in July 2017.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 39 and for that reason denies those allegations.

40.  The marketplace confirmed that CGI's assets were worth less than its liabilities long before CGI filed for bankruptcy. From August 2015 to April 2016, with the help of an experienced financial advisor, CGI marketed itself for a potential sale or merger, but failed to attract a viable offer that would pay off CGI's debts and return a profit to its shareholders. The Board should have pursued any transaction it could have achieved to reduce the ultimate loss to creditors, but the market itself had demonstrated that CGI's assets were worth less than its liabilities. When CGI abandoned these sale or merger efforts in April 2016, one Board member candidly expressed concern about CGI's survival, asking: "Is this Company beyond repair?"

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 40 and for that reason denies those allegations.

41. CGI's lenders shared these concerns. During a September 2016 meeting with the company's management, CGI's lenders expressed "great concern as to the direction of the Company." Moreover, as discussed above, shortly after the Board authorized the 2016 Patronage Dividend in September 2016, CGI's lenders forced CGI to defer paying 30% of the dividend because paying the full 2016 Patronage Dividend put CGI in violation of its liquidity covenants.

ANSWER: Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 41 and for that reason denies those allegations.

### CAUSES OF ACTION

### COUNT ONE
### Turnover of Property
### Pursuant to 11 U.S.C. § 542(b) - Unpaid Receivable
### (Against All Defendants)

42. The Trustee re-alleges the allegations set forth in the above paragraphs.

**ANSWER:**  Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 42 of the Complaint.

43. Defendants received goods on account from CGI in the amount of the Unpaid Receivable.

**ANSWER:**  Defendant hereby denies the allegation of Paragraph 43 of the Complaint as it applies to it and lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 43 as to other Defendants and for that reason denies those allegations.

44. Defendants did not remit payment to CGI for the Unpaid Receivable.

**ANSWER:** Defendant hereby denies the allegation of Paragraph 44 of the Complaint as it applies to it and lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 44 as to other Defendants and for that reason denies those allegations.

45. CGI's bankruptcy estate (the "CGI Estate") is entitled to payment of the Unpaid Receivable plus costs, expenses, and statutory interest under 815 Ill. Comp. Stat. Ann. 205/2.

**ANSWER:** Defendant hereby denies the allegation of Paragraph 45 of the Complaint as it applies to it and lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 45 as to other Defendants and for that reason denies those allegations.

46. Defendants are in possession, custody, and/or control of the Unpaid Receivable.

**ANSWER:** Defendant hereby denies the allegation of Paragraph 46 of the Complaint as it applies to it and lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 45 as to other Defendants and for that reason denies those allegations.

47. The Unpaid Receivable constitutes a matured, payable on demand, valid and existing debt, due and owing by the Defendants to the CGI Estate.

**ANSWER:** The assertions of Paragraph 47 consists of conclusions of law to which no answer is required. To the extent an answer is required Defendant denies the allegations of Paragraph 47.

48. The Unpaid Receivable is property of the CGI Estate under 11 U.S.C. § 541(a), and thus subject to turnover pursuant to 11 U.S.C. § 542(b).

**ANSWER**: The assertions of Paragraph 48 consists of conclusions of law to which no answer is required. To the extent an answer is required Defendant denies the allegations of Paragraph 48.

49. Accordingly, the Trustee seeks turnover of the Unpaid Receivable. In addition, pursuant to Article XV of the By-Laws and Section 13 of the Rules & Regulations, the Trustee seeks to recover reasonable attorney's fees, court costs, and all other expenses and costs incurred in recovering the Unpaid Receivable.

**ANSWER:** The assertions of Paragraph 49 consists of conclusions of law to which no answer is required. To the extent an answer is required Defendant denies the allegations of Paragraph 49.

### COUNT TWO
### Breach of Contract
### (Against All Defendants)

50. Pleading in the alternative to Count One, the Trustee re-alleges the allegations set forth in paragraphs 1 through 41.

**ANSWER:** Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 50 of the Complaint.

51. The Purchasing Arrangement is a valid and enforceable contract governed by the course of dealing between the parties, the By-Laws, and the Rules & Regulations.

**ANSWER:** The assertions of Paragraph 51 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 51.

52. Pursuant to the Purchasing Arrangement, Defendants received goods on account from CGI in the amount of the Unpaid Receivable.

**ANSWER:** Defendant denies the allegation of Paragraph 52 of the Complaint as it applies to it and lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 52 as to other Defendants and for that reason denies those allegations.

53. CGI fully performed its obligations under the Purchasing Arrangement.

**ANSWER:** Defendant denies the allegation of Paragraph 53 of the Complaint.

54. Defendants did not maintain an open ACH account to satisfy all amounts owed to CGI for goods purchased on account, and Defendants otherwise failed to remit payment.

**ANSWER**: Defendant denies the allegation of Paragraph 54 of the Complaint as it applies to it and lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 54 as to other Defendants and for that reason denies those allegations.

55. The Trustee sent Defendants the Demand Letter.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 55 and for that reason denies those allegations.

56. Defendants failed to pay the Unpaid Receivable and thus materially breached the Purchasing Arrangement, the By-Laws, and the Rules & Regulations.

**ANSWER:** The assertions of Paragraph 56 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 56.

57. The CGI Estate is entitled to payment of the Unpaid Receivable.

**ANSWER:** The assertions of Paragraph 57 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 57.

58. As a result of their breach, Defendants have caused CGI to incur damages in an amount equal to, at least, the Unpaid Receivable plus costs, expenses, and statutory interest under 815 Ill. Comp. Stat. Ann. 205/2.

**ANSWER:** The assertions of Paragraph 58 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 58.

59. Accordingly, the Trustee seeks to recover these damages. In addition, pursuant to Section XV of the By-Laws and Section 13 of the Rules & Regulations, the Trustee seeks to recover reasonable attorney's fees, court costs, and all other expenses and costs incurred recovering the Unpaid Receivable.

**ANSWER:** The assertions of Paragraph 59 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 58.

**COUNT THREE**
**Avoidance of Fraudulent Obligations**
**Pursuant to 11 U.S.C. § 548(a)(l)(B)-2016 Patronage Dividend**
**(Against All Defendants)**

60. The Trustee re-alleges the allegations set forth in paragraphs 1 through 41.

**ANSWER:**  Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 60 of the Complaint.

61. On or within two years before the Petition Date, CGI authorized the 2016 Patronage Dividend.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 61 and for that reason denies those allegations.

 62. The 2016 Patronage Dividend constitutes an obligation incurred by CGI.

**ANSWER:** The assertions of Paragraph 62 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 62.

63. CGI incurred this obligation for the benefit of the Defendants.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 63 and for that reason denies those allegations.

64. CGI received less than reasonably equivalent value in exchange for incurring this obligation.

**ANSWER:** Defendant denies the allegation of Paragraph 64 of the Complaint as it applies to it and lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 64 as to other Defendants and for that reason denies those allegations.

65. CGI was insolvent at the time of or as a result of incurring this obligation. CGI

also was engaged in a business or transaction or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time that CGI incurred this obligation.

ANSWER: Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 65 and for that reason denies those allegations.

66. Accordingly, the Trustee seeks to avoid the 2016 Patronage Dividend obligation pursuant to 11 U.S.C. § 548(a)(l)(B).

**ANSWER:** The assertions of Paragraph 66 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 68.

**COUNT FOUR**
**Avoidance of Fraudulent Transfers**
**Pursuant to 11 U.S.C. § 548(a)(l)(B)- Patronage Dividend Transfers**
**(Against All Defendants)**

67. The Trustee re-alleges the allegations set forth in paragraphs I through 41.

**ANSWER:**  Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 67 of the Complaint.

68. On or within two years before the Petition Date, CGI transferred the Patronage Dividend Transfers to the Defendants.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 68 and for that reason denies those allegations.

69. The Patronage Dividend Transfers constitute transfers of an interest in CGI's property.

**ANSWER:** The assertions of Paragraph 69 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 62.

70. The Patronage Dividend Transfers were made to or for the benefit of the Defendants.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 70 and for that reason denies those allegations.

71. CGI received less than reasonably equivalent value in exchange for the Patronage Dividend Transfers.

**ANSWER:** Defendant denies the allegation of Paragraph 71 of the Complaint as it applies to it and lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 71 as to other Defendants and for that reason denies those allegations.

72. CGI was insolvent at the time of or as a result of the Patronage Dividend Transfers. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time that CGI made the Patronage Dividend Transfers.

**ANSWER**: Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 72 and for that reason denies those allegations.

73. Accordingly, the Trustee seeks to avoid the Patronage Dividend Transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

**ANSWER:** The assertions of Paragraph 73 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 73.

**COUNT FIVE**
**Avoidance of Fraudulent Obligations**
**Pursuant to 11 U.S.C. § 548(a)(l)(B) -Allowance Dividend Transfers**
**(Against All Defendants)**

74. The Trustee re-alleges the allegations set forth in paragraphs 1 through 41.

**ANSWER:**  Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 74 of the Complaint.

75. CGI had no obligation to make the Allowance Dividend Transfers.

**ANSWER:** The assertions of Paragraph 75 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 75.

76. If, however, CGI had an obligation to make the Allowance Dividend Transfers, that obligation was incurred on or within two years before the Petition Date.

**ANSWER:** The assertions of Paragraph 76 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 76.

77.  If CGI incurred an obligation to make the Allowance Dividend Transfers, CGI did so for the benefit of the Defendants.

**ANSWER:** The assertions of Paragraph 77 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 77.

78. If CGI incurred an obligation to make the Allowance Dividend Transfers, CGI received less than reasonably equivalent value in exchange for doing so.

**ANSWER:** The assertions of Paragraph 78 consists of conclusions of law to which no answer is required. To the extent an answer is required Defendant denies the allegations of Paragraph 78.

79. If CGI had an obligation to make the Allowance Dividend Transfers, CGI was insolvent at the time of or as a result of incurring that obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of incurring any obligation to make the Allowance Dividend Transfers.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 79 and for that reason denies those allegations.

80. Accordingly, to the extent that CGI incurred any obligation to make the Allowance Dividend Transfers, the Trustee seeks to avoid that obligation pursuant to 11 U.S.C. § 548(a)(1)(B).

**ANSWER:** The assertions of Paragraph 80 consists of conclusions of law to which no answer is required. To the extent an answer is required Defendant denies the allegations of Paragraph 80.

**COUNT SIX**
**Avoidance of Fraudulent Transfers**
**Pursuant to 11 U.S.C. § 548(a)(l)(B)-Allowance Dividend Transfers**
**(Against All Defendants)**

81. The Trustee re-alleges the allegations set forth in paragraphs I through 41.

**ANSWER:** Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 81 of the Complaint.

82. On or within two years before the Petition Date, CGI made the Allowance Dividend Transfers to the Defendants.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 82 and for that reason denies those allegations.

83. The Allowance Dividend Transfers constitute transfers of an interest in CGI's property.

**ANSWER:** The assertions of Paragraph 83 consists of conclusions of law to which no answer is required. To the extent an answer is required Defendant denies the allegations of Paragraph 83.

84. The Allowance Dividend Transfers were made to or for the benefit of the Defendants.

**ANSWER:** The assertions of Paragraph 84 consists of conclusions of law to which no answer is required. To the extent an answer is required Defendant denies the allegations of Paragraph 84.

85. CGI received less than reasonably equivalent value in exchange for the Allowance Dividend Transfers.

**ANSWER:** The assertions of Paragraph 85 consists of conclusions of law to which no answer is required. To the extent an answer is required Defendant denies the allegations of Paragraph 85.

86. CGI was insolvent at the time of or as a result of the Allowance Dividend Transfers. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time that CGI made the Allowance Dividend Transfers.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 86 and for that reason denies those allegations.

87. Accordingly, the Trustee seeks to avoid the Allowance Dividend Transfers pursuant to 11 U.S.C. § 548(a)(l )(B).

**ANSWER:** The assertions of Paragraph 87 consists of conclusions of law to which no answer is required. To the extent an answer is required Defendant denies the allegations of Paragraph 85.

**COUNT SEVEN**
**Avoidance of Fraudulent Obligation**
**Pursuant to 11 U.S.C. § 548(a)(l)(B)- Purchase Deposit Transfers**
**(Against All Defendants)**

88. The Trustee re-alleges the allegations set forth in paragraphs 1 through 41.

**ANSWER:** Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 88 of the Complaint.

89. CGI had no obligation to make the Purchase Deposit Transfers.

**ANSWER:** The assertions of Paragraph 89 consists of conclusions of law to which no answer is required. To the extent an answer is required Defendant denies the allegations of Paragraph 85.

90. If, however, CGI had an obligation to issue the Purchase Deposit Transfers, that obligation was incurred on or within two years before the Petition Date.

**ANSWER:** The assertions of Paragraph 90 consists of conclusions of law to which no answer is required. To the extent an answer is required Defendant denies the allegations of Paragraph 90.

91. If CGI incurred an obligation to issue the Purchase Deposit Transfers, CGI did so for the benefit of the Defendants.

**ANSWER:** The assertions of Paragraph 91 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 91.

92. If CGI incurred an obligation to issue the Purchase Deposit Transfers, CGI received less than reasonably equivalent value in exchange for doing so.

**ANSWER:** The assertions of Paragraph 92 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 92.

93. If CGI had an obligation to make the Purchase Deposit Transfers, CGI was insolvent at the time of or as a result of incurring that obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of incurring any obligation to make the Purchase Deposit Transfers.

**ANSWER**: Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 93 and for that reason denies those allegations.

 94. Accordingly, to the extent that CGI incurred any obligation to make the Purchase Deposit Transfers, the Trustee seeks to avoid that obligation pursuant to 11 U.S.C. § 548(a)(l)(B).

**ANSWER**: The assertions of Paragraph 94 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 94.

**COUNT EIGHT**
**Avoidance of Fraudulent Transfers**
**Pursuant to 11 U.S.C. § 548(a)(l)(B)- Purchase Deposit Transfers**
**(Against All Defendants)**

95. The Trustee re-alleges the allegations set forth in paragraphs 1 through 41.

**ANSWER:**  Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 95 of the Complaint.

96. On or within two years before the Petition Date, CGI made the Purchase Deposit Transfers to the Defendants.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 96 and for that reason denies those allegations.

97. The Purchase Deposit Transfers constitute transfers of an interest in CGI's

property.

**ANSWER**: The assertions of Paragraph 97 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 97.

98. The Purchase Deposit Transfers were made to or for the benefit of Defendants.

**ANSWER:** The assertions of Paragraph 98 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 98.

99. CGI received less than reasonably equivalent value in exchange for the Purchase Deposit Transfers.

**ANSWER**: The assertions of Paragraph 99 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 99.

100. CGI was insolvent at the time of or as a result of Purchase Deposit Transfers. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of the Purchase Deposit Transfers.

**ANSWER**: Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 100 and for that reason denies those allegations.

101. Accordingly, the Trustee seeks to avoid the Purchase Deposit Transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

**ANSWER:** The assertions of Paragraph 101 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 101.

**COUNT NINE**
**Avoidance of Preferential Transfers**
**Pursuant to 11 U.S.C. § 547(b)-Purchase Deposit Transfers**
**(Against All Defendants)**

102. Pleading in the alternative to Count Eight, the Trustee re-alleges the allegations set forth in paragraphs 1 through 41.

**ANSWER:**  Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 102 of the Complaint.

103. Defendants are insiders of CGI and SVT.

**ANSWER:** The assertions of Paragraph 103 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 103.

104. Within one year before the Petition Date, CGI made the Purchase Deposit Transfers, or caused such transfers to be made, to the Defendants.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 104 and for that reason denies those allegations.

105. The Purchase Deposit Transfers constitute transfers of an interest in CGI's property.

**ANSWER:** The assertions of Paragraph 105 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 105.

106. The Purchase Deposit Transfers were made to or for the benefit of the Defendants, which were creditors of CGI.

**ANSWER:** The assertions of Paragraph 106 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 106.

107. The Purchase Deposit Transfers were made for or on account of one or more antecedents debts owed by CGI to the Defendants prior to the date on which such transfers were made.

**ANSWER:** The assertions of Paragraph 107 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 107.

108. CGI was insolvent when the Purchase Deposit Transfers were made.

**ANSWER**: Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 108 and for that reason denies those allegations.

109. The Purchase Deposit Transfers enabled the Defendants to receive more than they would have received if: (a) such transfers had not been made; and (b) the Defendants had received payment of the underlying debt pursuant to chapter 7 of the Bankruptcy Code.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 109 and for that reason denies those allegations.

110. Accordingly, the Trustee seeks to avoid the Purchase Deposit Transfers pursuant to 11 U.S.C. § 547(b).

**ANSWER:** The assertions of Paragraph 110 consists of conclusions of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 110.

**COUNT TEN**
**Avoidance of Fraudulent Obligations**
**Pursuant to 11 U.S.C. § 544(b)(l) and 740 ILCS 160/5 - 2016 Patronage Dividend**
**(Against All Defendants)**

111. The Trustee re-alleges the allegations set forth in paragraphs l through 41.

**ANSWER:**  Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 111 of the Complaint.

112. On or within four years before the Petition Date, CGI authorized the 2016 Patronage Dividend.

**ANSWER**: Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 112 and for that reason denies those allegations.

113. The 2016 Patronage Dividend constitutes an obligation incurred by CGI.

**ANSWER:** The allegation of Paragraph 113 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 113.

114. CGI incurred this obligation for the benefit of the Defendants.

**ANSWER:** The allegation of Paragraph 114 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 114.

115. CGI received less than reasonably equivalent value in exchange for incurring this obligation.

**ANSWER:** The allegation of Paragraph 115 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 115.

116. CGI was insolvent at the time of or as a result of incurring this obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of incurring any obligation to make the 2016 Patronage Dividend.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 116 and for that reason denies those allegations.

117. Accordingly, the Trustee seeks to avoid the 2016 Patronage Dividend obligation pursuant to 11 U.S.C. § 544(6)(1) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:** The allegation of Paragraph 117 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 117.

**COUNT ELEVEN**
**Avoidance of Fraudulent Transfers**
**Pursuant to 11 U.S.C. § 544(b)(l) and 740 ILCS 160/5- Patronage Dividend Transfers**
**(Against All Defendants)**

118. The Trustee re-alleges the allegations set forth in paragraphs I through 41.

**ANSWER:**  Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 118 of the Complaint.

119. On or within four years before the Petition Date, CGI transferred the Patronage Dividend Transfers to the Defendants.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 119 and for that reason denies those allegations.

120. The Patronage Dividend Transfers constitute transfers of an interest in CGI's property.

**ANSWER:** The allegation of Paragraph 120 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 120.

121. The Patronage Dividend Transfers were made to or for the benefit of the Defendants.

**ANSWER:** The allegation of Paragraph 121 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 121.

122. CGI received less than reasonably equivalent value in exchange for the Patronage Dividend Transfers.

**ANSWER:** The allegation of Paragraph 122 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 122.

123. CGI was insolvent at the time of or as a result of Patronage Dividend Transfers.  CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of the Patronage Dividend Transfers.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 123 and for that reason denies those allegations.

124. Accordingly, the Trustee seeks to avoid the Patronage Dividend Transfers pursuant to 11 U.S.C. § 544(b)(I) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:** The allegation of Paragraph 124 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 124.

## COUNT TWELVE
### Avoidance of Fraudulent Obligations
### Pursuant to 11 U.S.C. § 544(b)(I) and 740 ILCS 160/5 -Allowance Dividend Transfers
### (Against All Defendants)

125. The Trustee re-alleges the allegations set forth in paragraphs I through 41.

**ANSWER:**  Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 125 of the Complaint.

126. CGI had no obligation to make the Allowance Dividend Transfers.

**ANSWER:** The allegation of Paragraph 126 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 126.

127. If, however, CGI incurred an obligation to make the Allowance Dividend Transfers, that obligation was incurred within four years before the Petition Date.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 127 and for that reason denies those allegations.

128. If CGI incurred an obligation to make the Allowance Dividend Transfers, CGI did so for the benefit of the Defendants.

**ANSWER:** The allegation of Paragraph 128 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 128.

129. If CGI incurred an obligation to make the Allowance Dividend Transfers, CGI

received less than reasonably equivalent value in exchange for doing so.

**ANSWER:** The allegation of Paragraph 129 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 129.

130. If CGI had an obligation to make the Allowance Dividend Transfers, CGI was insolvent at the time of or as a result of incurring that obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of incurring any obligation to make the Allowance Dividend Transfers.

**ANSWER:** The allegation of Paragraph 130 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 130.

131. Accordingly, to the extent that CGI incurred any obligation to make the Allowance Dividend Transfers, the Trustee seeks to avoid that obligation pursuant to I I U.S.C. § 544(b)(I) and 740 Ill. Comp. Stat. Ann. I 60/5(a)(2).

**ANSWER:** The allegation of Paragraph 131 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 131.

## COUNT THIRTEEN
### Avoidance of Fraudulent Transfers
### Pursuant to 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5-Allowance Dividend Transfers
### (Against All Defendants)

132. The Trustee re-alleges the allegations set forth in paragraphs I through 41.

**ANSWER:**  Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 132 of the Complaint.

133. On or within before the Petition Date, CGI made the Allowance Dividend Transfers to the Defendants.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 133 and for that reason denies those allegations.

134. The Allowance Dividend Transfers constitute transfers of an interest in CGI's property.

**ANSWER:** The allegation of Paragraph 134 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 134.

135. The Allowance Dividend Transfers were made to or for the benefit of the Defendants.

**ANSWER:** The allegation of Paragraph 135 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 135.

136. CGI received less than reasonably equivalent value in exchange for the Allowance Dividend Transfers.

**ANSWER:** The allegation of Paragraph 136 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 136.

137. CGI was insolvent at the time of or as a result of Allowance Dividend Transfers. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of the Allowance Dividend Transfers.

**ANSWER:** The allegation of Paragraph 137 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 137.

138. Accordingly, the Trustee seeks to avoid the Allowance Dividend Transfers pursuant to 11 U.S.C. § 544(b)(l) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:** The allegation of Paragraph 138 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 138.

## COUNT FOURTEEN
### Avoidance of Fraudulent Obligations
### Pursuant to 11 U.S.C. § 544{b)(l) and 740 ILCS 160/5- Purchase Deposit Transfers
### (Against All Defendants)

139. The Trustee re-alleges the allegations set forth in paragraphs I through 41.

**ANSWER:**  Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 139 of the Complaint.

140. CGI had no obligation to make the Purchase Deposit Transfers.

**ANSWER:** The allegation of Paragraph 140 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 140.

141. If, however, CGI incurred an obligation to make the Purchase Deposit Transfers, CGI did so on or within four years before the Petition Date.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 141 and for that reason denies those allegations.

142. If CGI incurred an obligation to make the Purchase Deposit Transfers, CGI did so for the benefit of the Defendants.

**ANSWER**: The allegation of Paragraph 142 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 142.

143. If CGI incurred an obligation to make the Purchase Deposit Transfers, CGI received less than reasonably equivalent value in exchange for doing so.

**ANSWER**: The allegation of Paragraph 143 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 143.

144. If CGI had an obligation to make the Purchase Deposit Transfers, CGI was insolvent at the time of or as a result of incurring that obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of incurring any obligation to make the Purchase Deposit Transfers.

**ANSWER:** The allegation of Paragraph 144 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 144.

145. Accordingly, to the extent that CGI incurred any obligation to make the Purchase Deposit Transfers, the Trustee seeks to avoid that obligation pursuant to I l U.S.C. § 544(b)( 1) and 740 Ill. Comp. Ann. l 60/5(a)(2).

**ANSWER:** The allegation of Paragraph 145 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 145.

**COUNT FIFTEEN**

**Avoidance of Fraudulent Transfers**
**Pursuant to 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5- Purchase Deposit Transfers**
**(Against All Defendants)**

146. The Trustee re-alleges the allegations set forth in paragraphs I through 41.

**ANSWER:** Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 146 of the Complaint.

147. On or within four years before the Petition Date, CGI made the Purchase Deposit Transfers to the Defendants.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 147 and for that reason denies those allegations.

148. The Purchase Deposit Transfers constitute transfers of an interest in CGI's property.

**ANSWER:** The allegation of Paragraph 148 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 148.

149. The Purchase Deposit Transfers were made to or for the benefit of the Defendants.

**ANSWER:** The allegation of Paragraph 149 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 149.

150. CGI received less than reasonably equivalent value in exchange for the Purchase Deposit Transfers.

**ANSWER:** The allegation of Paragraph 150 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 150.

151. CGI was insolvent at the time of or as a result of Purchase Deposit Transfers. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of the Purchase Deposit Transfers.

**ANSWER:** The allegation of Paragraph 151 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 151.

152. Accordingly, the Trustee seeks to avoid the Purchase Deposit Transfers pursuant to

11 U.S.C. *§* 544(b)(I) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:** The allegation of Paragraph 152 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 152.

## COUNT SIXTEEN
### Avoidance of Fraudulent Transfers
### Pursuant to 11 U.S.C. § 544(b)(l) and 740 ILCS 160/6- Purchase Deposit Transfers
### (Against All Defendants)

153. Pleading in the alternative to Count Fifteen, the Trustee re-alleges the allegations set forth in paragraphs I through 41.

**ANSWER:**  Defendant hereby restates his answers to Paragraphs 1 to 41 and hereby incorporates them as his answers to Paragraph 153 of the Complaint.

154. On or within four years before the Petition Date, CGI made the Purchase Deposit Transfers to the Defendants.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 154 and for that reason denies those allegations.

155. The Purchase Deposit Transfers constitute transfers of an interest in CGI's property.

**ANSWER:** The allegation of Paragraph 155 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 155.

156. CGI received less than reasonably equivalent value in exchange for the Purchase Deposit Transfers.

**ANSWER:** The allegation of Paragraph 156 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 156.

157. The Purchase Deposit Transfers were made to or for the benefit of the Defendants, which were creditors of CGI.

**ANSWER:** The allegation of Paragraph 157 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 157.

158. The Purchase Deposit Transfers were made for or on account of one or more

antecedents debts owed by CGI to the Defendants prior to the date on which such transfers were made.

**ANSWER:** Defendant admits the allegations of paragraph 158 of the Complaint.

159. CGI was insolvent when the Purchase Deposit Transfers were made.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 159 and for that reason denies those allegations.

160. Accordingly, the Trustee seeks to avoid the Purchase Deposit Transfers pursuant to To 11 U.S.C. § 544(6)( l) and 740 Ill. Comp. Stat. Ann. 160/6(a).

**ANSWER:** The allegation of Paragraph 160 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 160.

## COUNT SEVENTEEN
### Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550(a)
### (Against All Defendants)

161. The Trustee re-alleges the allegations set forth in paragraphs I through 160.

**ANSWER:**  Defendant restates its answers to Paragraphs 1 to 160 and hereby incorporates them as its answers to Paragraph 161 of the Complaint.

162. The Patronage Dividend Transfers, the Allowance Dividend Transfers, and the Purchase Deposit Transfers are subject to avoidance pursuant to 11 U.S.C. §§ 544(6), 547(6), and 548(a)(1)(B).

**ANSWER:** The allegation of Paragraph 162 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 162.

163. The Defendants received the Patronage Dividend Transfers, the Allowance Dividend Transfers, and the Purchase Deposit Transfers as the initial transferees.

**ANSWER:**  Defendant admits the allegations of paragraph 163 of the Complaint.

164. Accordingly, pursuant to 11 U.S.C. § 550(a)(I), the Trustee seeks to recover the value of the Patronage Dividend Transfers, the Allowance Dividend Transfers, and the Purchase Deposit Transfers from the Defendants.

**ANSWER:** The allegation of Paragraph 164 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 164.

**COUNT EIGHTEEN**
**Turnover of Property**
**Pursuant to 11 U.S.C. § 542(b)- Promissory Note Debt**
**(Against Esequiel)**

165. The Trustee re-alleges the allegations set forth in paragraphs I through 41.

**ANSWER:**  Defendant hereby restates its answers to Paragraphs 1 to 41 and hereby incorporates them as its answers to Paragraph 165 of the Complaint.

166. Esequiel executed the Loan Documents in favor of CGI.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 166 and for that reason denies those allegations.

167. CGI fully performed under the Loan Documents.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 167 and for that reason denies those allegations.

168. Under the Note, Esequiel was required to, among other things, make periodic payments of principal and interest to CGI until the principal was paid in full.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 168 and for that reason denies those allegations.

169. Esequiel failed to make all required payments due under the Note and thus is in default.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 169 and for that reason denies those allegations.

170. On or about May 31, 2018, the Trustee sent the Demand Letter to Esequiel in accordance with the Acceleration Procedure.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 170 and for that reason denies those allegations.

171. Esequiel did not make payment or otherwise respond.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 171 and for that reason denies those allegations.

172. On or about June 5, 2018, the Trustee declared all outstanding interest, penalties, and principal immediately due and payable in the amount the Note Obligation.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 172 and for that reason denies those allegations.

173. Defendants are in possession, custody, and control of the Note Obligation.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 173 and for that reason denies those allegations.

174. The Note Obligation constitutes a matured, payable on demand, valid and existing debt, due and owing by Esequiel to the CGI Estate.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 174 and for that reason denies those allegations.

175. The CGI Estate is also entitled to collect statutory interest from Esequiel under 815 Ill. Comp. Stat. Ann. 205/2.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 175 and for that reason denies those allegations.

176. The Note Obligation is property of the CGI Estate under 11 U.S.C. § 54l(a), and thus subject to turnover pursuant to 11 U.S.C. § 542(b).

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 176 and for that reason denies those allegations.

177. Accordingly, the Trustee seeks turnover of the Note Obligation. In addition, pursuant to Section XV of the By-Laws, Section 13 of the Rules & Regulations, and Section 6(F) of the Note, the Trustee seeks to recover reasonable attorney's fees, court costs, and all other expenses and costs incurred enforcing the Note and other Loan Documents.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 177 and for that reason denies those allegations.

## COUNT NINETEEN
### Breach of Promissory Note
### (Against Esequiel)

178. Pleading in the alternative to Count Eighteen, the Trustee re-alleges the allegations set forth in paragraphs 1 through 41.

**ANSWER:**  Defendant hereby restates its answers to Paragraphs 1 to 41 and hereby incorporates them as its answers to Paragraph 178 of the Complaint.

179. The Note constitutes an enforceable contract between CGI and Esequiel.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 179 and for that reason denies those allegations.

180. CGI fully complied with the Note.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 180 and for that reason denies those allegations.

181. Esequiel materially breached the Note by failing to pay all sums due thereunder.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 181 and for that reason denies those allegations.

182. As a result of their breach, Esequiel caused CGI to incur damages in an amount equal to, at least, the Note Obligation plus costs, expenses, penalties, contractual interest, and statutory interest under 815 Ill. Comp. Stat. Ann. 205/2.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 182 and for that reason denies those allegations.

183. Accordingly, the Trustee seeks to recover these damages. In addition, pursuant to Section XV of the By-Laws, Section 13 of the Rules & Regulations, and Section 6(F) of the Note, the Trustee seeks to recover reasonable attorney's fees, court costs, and all other expenses and costs incurred enforcing the Note and other Loan Documents.

**ANSWER:** Defendant lacks sufficient knowledge to form an opinion as to the truth of the allegations of Paragraph 183 and for that reason denies those allegations.

**COUNT TWENTY**
**Unjust Enrichment**
**(Against All Defendants)**

184. Pleading in the alternative to Counts One through Nineteen, the Trustee re-alleges the allegations set forth in paragraphs 1 through 41.

**ANSWER:**  Defendant hereby restates its answers to Paragraphs 1 to 41 and hereby incorporates them as its answers to Paragraph 184 of the Complaint.

185. Defendants received benefits-at CGI's expense-in connection with the Purchasing Arrangement, The Loan Documents, and certain avoidable transfers. Specifically. Defendants received benefits associated with the Unpaid Receivable, the Patronage Dividend

Transfers, the Allowance Dividend Transfers, the Purchase Deposit Transfers, and the Note
Obligation.

**ANSWER:** Defendant admits that it received benefits from its membership in CGI's Purchasing
Arrangement, Patronage Dividend, Allowance Dividend programs. Defendant denies all other
allegations in Paragraph 185 of the Complaint.

186. Defendants have unjustly retained these benefits to CGI's detriment, even though
the Trustee has attempted to recover these benefits through the Demand Letter.

**ANSWER**: Defendant admits having received the trustee's demand letter. The rest of the
allegations of Paragraph 186 consist of conclusions of law to which no answer is required. To
the extent an answer is required Defendant denies the remaining allegations of Paragraph 186.

187. Retention of these benefits by Defendants violates fundamental principles of
justice, equity, and good conscience.

**ANSWER:** Defendant denies the allegations of Paragraph 187 of the complaint.

188. Accordingly, the Trustee seeks to recover the amount by which Defendants have
been unjustly enriched.

**ANSWER:** The allegation of Paragraph 188 consists of a conclusion of law to which no answer
is required. To the extent an answer is required Defendant denies the allegations of Paragraph
188.

**COUNT TWENTY-ONE**
**Disallowance of Claims Pursuant to 11 U.S.C. § 502**
**(Against All Defendants)**

189. The Trustee re-alleges the allegations set forth in paragraphs l through 188.

**ANSWER:** Defendant hereby restates its answers to Paragraphs 1 to 188 and hereby
incorporates them as its answers to Paragraph 189 of the Complaint.

190. This count is asserted against Defendants to the extent that any claims have been
filed by or scheduled on behalf of Defendants against the CGI Estate.

**ANSWER:** The allegation of Paragraph 190 consists of a conclusion of law to which no answer
is required. To the extent an answer is required Defendant denies the allegations of Paragraph
190.

191. Defendants are persons or entities from which property is recoverable under 11 U.S.C. *§§*
542 and 550 (the "Recoverable Property").

**ANSWER:** The allegation of Paragraph 191 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 191.

192. Defendants have not turned over the Recoverable Property to the CGI Estate.

**ANSWER:** Defendant admits that it has not turned over any property to the estate.  The rest of the allegations of Paragraph 192, including "recoverability" of property consists of conclusions of law to which no answer is required.  To the extent an answer is required to the remaining allegations, Defendant denies them.

193. Accordingly, pursuant to 11 U.S.C. § 502(d), the Trustee hereby objects to and seeks disallowance of any claims by Defendants against the CGI Estate. Moreover, pursuant to 11 U.S.C. § 5020), the Trustee seeks reconsideration and disallowance of any claims by Defendants against the CGI Estate to the extent that such claims have been allowed by this Court.

**ANSWER:** The allegation of Paragraph 193 consists of a conclusion of law to which no answer is required.  To the extent an answer is required Defendant denies the allegations of Paragraph 193.

## CONDITIONS PRECEDENT

194. All conditions precedent to the Trustee's claims for relief have been performed or have occurred.

**ANSWER:** Defendant denies the allegations of Paragraph 194.

## FIRST AFFIRMATIVE DEFENSE AGAINST §547 TRANSFERS

The §547 transfers alleged in Count 9 of the Complaint may not be avoided.  In each instance alleged in the Complaint, these transfers were payments made by the debtor in the ordinary course of business and financial affairs between debtor and defendant. In each instance these transfers were made according to ordinary business terms, within the scope of 11 U.S.C. §547 (c)(2) and F.3d 1029 (7th Cir. 1993).

## SECOND AFFIRMATIVE DEFENSE – NEW SUBSEQUENT VALUE PROVIDED

In each instance Defendant subsequently provided new value to Debtor after each transfer. Therefore, the transfer alleged in the Complaint are not avoidable under 11 U.S.C. §547(c)(4).

## THIRD AFFIRMATIVE DEFENSE – 11 U.S.C. 547(c)(1) CONTEMPORANEOUS EXCHANGE FOR NEW VALUE GIVEN

To the extent the Trustee seeks to obtain reimbursement or avoid transfers from Debtor to Defendant within 90 days before the filing of the Bankruptcy Petition by Debtor, those transfers

were contemporaneous exchanges for new value given to the debtor by Defendant and as such they fall within 11 U.S.C. §547(c)(1)

## FOURTH AFFIRMATIVE DEFENSE – SET OFF

Defendant hereby claims and reserves the right to assert setoffs.  The Purchase Money Deposit Transfers to Defendant listed in Exhibit G-3 were a return of excess money voluntarily deposited by Defendant above and beyond what was required to be deposited under the Contract.

## FIFTH AFFIRMATIVE DEFENSE ILLINOIS FRAUDS ACT - 740 ILCS 80/1

The Contract was not signed by Defendant.  The Contract falls under the purview of the Illinois Frauds Act and as such it is unenforceable against Defendant.

## ADDITIONAL DEFENSES

To the extent allowed by applicable Bankruptcy Rules, Defendant reserves the right to assert all applicable defenses to the claims asserted by the Plaintiff in the Complaint. Defendant has yet to obtain discovery in this action, Defendant reserves the right to amend or otherwise supplement this pleading, including the defenses set forth herein as may be appropriate. Without limiting the generality of the foregoing, and without regard to as whether the defenses set forth above are affirmative defenses within the meaning of Fed.R.Civ.P.8(c) and Fed.R.Bankr.P. 7008, and without conceding that any such defenses must be set forth in this Answer at this time, Defendant pleads the above affirmative defenses.


        WHEREFORE, Defendant Benicio & Company, Inc. prays that this Court enter judgment in favor of Defendant and against Plaintiff as to Plaintiffs Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§544, 547, 548, and 550 and to Disallow Claims Pursuant to 11 U.S.C. §502 and deny all requests for turnover under 11 U.S.C. § 542(b) and all other relief pursued by Plaintiff under 740 ILCS 160/5 and to grant such other and further relief to Defendant as this Court deems equitable and just.


                                        Benicio & Company, Inc.


                                        By: _____
                                            One of its Attorneys


Glenn Betancourt
Attorney No. 6220742
2720 South River Road, Suite 23
Des Plaines, IL.  60018
Tel 847-768-5805
Courtburg1@outlook.com